UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AYMAN FAREH SOLIMAN,<br><br>      Plaintiff,<br><br>v.<br><br>TERRORIST SCREENING CENTER,<br><br>      Defendant. | Civil Action No. 24-0634 (LLA) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................1

STANDARDS OF REVIEW...................................................................................................3

    I.       Motion for Summary Judgment Under Rule 56 .....................................................3

ARGUMENT...........................................................................................................................4

    I.       The FBI Conducted An Adequate Search for Responsive Records .......................4

    II.      The FBI Properly Asserted *Glomar* Responses......................................................6

    A.      National Security or Intelligence Records..............................................................7

    B.      Records that Would Identify Individuals in the Witness Security Program ...........9

    C.      Records that Would Identify Individuals on a Watchlist ........................................9

    D.      Records that Endanger the Life or Physical Safety of Confidential Sources........11

CONCLUSION......................................................................................................................12

# **TABLE OF AUTHORITIES**

*ACLU v. Dep't of Def.*,
  628 F.3d 612 (D.C. Cir. 2011) ............................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................................... 3

*Barnes v. FBI*,
  35 F.4th 828–31 (D.C. Cir. 2022) ..................................................................................... 9, 10

*Budik v. Dep't of Army*,
  742 F. Supp. 2d 20 (D.D.C. 2010) ......................................................................................... 5

*CIA v. Sims*,
  471 U.S. 159 (1985) ............................................................................................................... 9

*Clemente v. FBI*,
  867 F.3d 111 (D.C. Cir. 2017) ........................................................................................... 4, 6

*Competitive Enter. Inst. v. NSA*,
  78 F. Supp. 3d 45 (D.D.C. 2015) ........................................................................................... 7

*Ctr. for Nat'l Sec. Studies v. Dep't of Just.*,
  331 F.3d 918 (D.C. Cir. 2003) ............................................................................................... 7

*Defenders of Wildlife v. Dep't of Interior*,
  314 F. Supp. 2d 1 (D.D.C. 2004) ........................................................................................... 5

*Defenders of Wildlife v. U.S. Border Patrol*,
  623 F. Supp. 2d 83 (D.D.C. 2009) ......................................................................................... 5

*Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*,
  777 F.3d 518 (D.C. Cir. 2015) ....................................................................................... 11, 12

*Greenberg v. Dep't of Treasury*,
  10 F. Supp. 2d 3 (D.D.C. 1998) ............................................................................................. 4

*Iturralde v. Comptroller of Currency*,
  315 F.3d 311 (D.C. Cir. 2003) ............................................................................................... 4

*Jud. Watch, Inc. v. Rossotti*,
  285 F. Supp. 2d 17 (D.D.C. 2003) ......................................................................................... 4

*Kowalczyk v. Dep't of Just.*,
  73 F.3d 386 (D.C. Cir. 1996) ................................................................................................. 5

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ............................................................................................... 7

*Machado Amadis v. Dep't of State*,
    971 F.3d 364 (D.C. Cir. 2020) ............................................................................... 3

*Marks v. Dep't of Just.*,
    578 F.2d 261 (9th Cir. 1978) ................................................................................. 5

*Oglesby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ......................................................................... 4, 5, 6

*Reps. Comm. for Freedom of the Press v. Dep't of Just.*,
    816 F.2d 730 (D.C. Cir.) ........................................................................................ 7

*Rhodes v. FBI*,
    316 F. Supp. 3d 173 (D.D.C. 2018) ..................................................................... 10

*Roth v. Dep't of Just.*,
    642 F.3d 1161 (D.C. Cir.2011) .............................................................................. 6

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ............................................................................. 4

*Schaerr v. Dep't of Just.*,
    435 F. Supp. 3d 99 (D.D.C. 2020) ..................................................................... 8, 9

*Shem-Tov v. Dep't of Just.*,
    531 F. Supp. 3d 102 (D.D.C. 2021) ..................................................................... 11

*Truitt v. Dep't of State*,
    897 F.2d 540 (D.C. Cir. 1990) ........................................................................... 4, 6

*Ullah v. CIA*,
    435 F. Supp. 3d 177 (D.D.C. 2020) ....................................................................... 3

*Valencia-Lucena v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) ............................................................................... 4

## INTRODUCTION

This case arises from multiple Freedom of Information Act ("FOIA") requests that Plaintiff, Ayman Fareh Soliman, made to Defendant, the Federal Bureau of Investigation ("FBI"). Defendant now moves for summary judgment with respect to its search and *Glomar* responses. As discussed below, Defendant completed an adequate search for responsive records and properly invoked *Glomar* responses to portions of Plaintiff's FOIA requests. Accordingly, the Court should grant summary judgment in Defendant's favor.

## BACKGROUND

Defendant instantly summarizes the material facts set forth in greater detail in the attached Statement of Material Facts and the Declaration of Michael G. Seidel ("Seidel Declaration" or "Seidel Decl."), both of which are incorporated herein.

On October 28, 2021, Plaintiff submitted FOIA requests to the FBI. Seidel Decl. ¶¶ 5, 6. The FOIA requests, which sought various records relating to Plaintiff, were directed to the FBI's Record/Information Dissemination Section and to the Terrorist Screening Center. *See id.* The Terrorist Screening Center is a subcomponent of the FBI. *See id.* ¶ 6. On February 15, 2022, the FBI informed Plaintiff that it conducted a search of all places reasonably expected to have responsive records, but that it was unable to locate any records responsive to the FOIA requests pursuant to the search. *See id.* ¶ 8. On May 13, 2022, Plaintiff submitted an appeal to the Department of Justice's Office of Information Policy by way of challenging the FBI's initial no-records response. *See id.* ¶ 10. On July 18, 2022, that Office notified Plaintiff that it was affirming the FBI's action in response to Plaintiff's FOIA request, determining that the FBI had conducted an adequate, reasonable search for records responsive to Plaintiff's request. Therefore, the Office notified Plaintiff that it was closing Plaintiff's appeal. *See id.* ¶ 12.

On June 28, 2022, Plaintiff submitted another FOIA request to the Terrorist Screening Center. *See id.* ¶ 13. On July 26, 2022, Plaintiff was informed of the FBI's no-records response to the aforesaid FOIA request. *See id.* ¶ 14.

Because of the nature of Plaintiff's FOIA requests, the FBI conducted its searches within the automated indices of its Central Records System. *See id.* ¶ 15. The Central Records System is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency, and in the fulfillment of its administrative and personnel functions. *See id.* ¶ 16. The Central Records System spans the entire FBI organization and encompasses the records of the FBI's headquarters, field offices, and legal attaché offices worldwide. *See id.* In conducting its searches, the FBI employed the following search terms: "Soliman, Ayman," "Ayman, Fareh," "Fareh, Soliman," "Ayman Soliman," "Fareh Ayman," and "Soliman Fareh." *See id.* ¶¶ 23-24. The FBI did not locate any responsive records as a result of its searches, and Plaintiff has hitherto failed to indicate any basis for why responsive records could reasonably have been expected to have been recovered in any location outside of the Central Records System. *See id.* ¶ 25.

Finally, the FBI's standard position is to assert a *Glomar* response (i.e., to neither confirm nor deny the existence of unacknowledged records) with respect to records falling into the following categories: national security or foreign intelligence records pursuant to FOIA Exemption 1 and Exemption 3, in conjunction with 50 U.S.C. § 3024(i)(1); records that would identify any individual in the Witness Security Program pursuant to FOIA Exemption 3 and 18 U.S.C. § 3521; records that would identify any individual on a watchlist pursuant to FOIA Exemption 7(E); and records, the release of which could reasonably be expected to endanger the

life or physical safety of a confidential human source pursuant to FOIA Exemptions 7(D), 7(E), and 7(F). *See id.*, Ex. K ¶ 4. Thus, the FBI properly asserted a *Glomar* response to the extent that Plaintiff sought records that could reveal the existence of unacknowledged intelligence records, watchlist records, Witness Security Program records, or confidential human source records. *See id.*, Ex. K ¶ 34.

## STANDARDS OF REVIEW

### I.     Motion for Summary Judgment Under Rule 56

Under Federal Rule of Civil Procedure ("Rule") 56, a court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Additionally, "FOIA cases typically and appropriately are decided on motions for summary judgment." *Ullah v. CIA*, 435 F. Supp. 3d 177, 181 (D.D.C. 2020) (cleaned up).  "[T]he agency bears the ultimate burden of proof to demonstrate . . . that it properly withheld any records." *Id.* "To withhold a responsive record, an agency must show both that the record falls within a FOIA exemption, 5 U.S.C. § 552(b), and that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption,' *id.* § 552(a)(8)(A)(i)(I)." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020).  "The agency may carry [the burden of establishing that a claimed exemption applies] by submitting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the

3

record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).

## ARGUMENT

### I. The FBI Conducted An Adequate Search for Responsive Records

The FBI fulfilled its obligation to search for records responsive to Plaintiff's FOIA requests. An agency is entitled to summary judgement in a FOIA case with respect to the adequacy of its search if it shows "'that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested.'" *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see also Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("The adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."); *Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("[p]erfection is not the standard by which the reasonableness of a FOIA search is measured"). It is appropriate for an agency to search for responsive records in accordance with the manner in which its records systems are indexed. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998). FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive documents are likely to be located in a

particular place. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978). Nor does FOIA require that an agency search every record system. *Oglesby*, 920 F.2d at 68.

Where an agency affidavit attests that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). "To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). Applying these principles, the Agency is entitled to summary judgment with respect to the adequacy of its search.

Here, there is no genuine dispute that the FBI fulfilled its obligations under the FOIA and performed adequate searches for records responsive to Plaintiff's FOIA requests. Because of the nature of Plaintiff's FOIA requests, the FBI conducted its searches within the automated indices of its Central Records System. Seidel Decl. ¶ 15. In conducting its searches, the FBI employed the following search terms: "Soliman, Ayman," "Ayman, Fareh," "Fareh, Soliman," "Ayman Soliman," "Fareh Ayman," and "Soliman Fareh." *Id.* ¶¶ 23-24. The FBI did not locate any responsive records as a result of its searches, and Plaintiff has hitherto failed to indicate any basis for why responsive records could reasonably have been expected to have been recovered in any location outside of the Central Records System. *Id.* ¶ 25; *see also Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 30 (D.D.C. 2010) ("the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested") (quoting *Oglesby*, 920 F.2d at 68).

The FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be expected

5

to locate responsive records subject to the FOIA. *Id.* ¶ 25. As such, the FBI conducted a search "reasonably calculated" to locate the records responsive to Plaintiff's FOIA request. *Truitt*, 897 F.2d at 542. The FBI "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested." *Clemente*, 867 F.3d at 117. Accordingly, the FBI is entitled to summary judgment with respect to the adequacy of its search.

## II. The FBI Properly Asserted *Glomar* Responses

In lieu of searching for and withholding exempt records, "an agency may issue a *Glomar* response, i.e., refuse to confirm or deny the existence or nonexistence of responsive records if the particular FOIA exemption at issue would itself preclude the acknowledgement of such documents." *Elec. Priv. Info. Ctr. ("EPIC") v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012). "Because *Glomar* responses are an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information, they are permitted only when confirming or denying the existence of records would itself 'cause harm cognizable under an FOIA exception.'" *Roth v. Dep't of Just.*, 642 F.3d 1161, 1178 (D.C. Cir.2011) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). "In determining whether the existence of agency records vel non fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases." *Wolf*, 473 F.3d at 374 (emphasis added). "An agency waives any right to make a *Glomar* response by disclosing whether responsive records exist." *Knight First Amend. Inst. v. CIA*, 11 F.4th 810, 815 (D.C. Cir. 2021).

Here, the FBI issued a *Glomar* response applicable to unacknowledged records in four categories: (a) national security or foreign intelligence records, which are withheld under

6

Exemptions 1 and 3 and 50 U.S.C. § 3024(i)(1); (b) records identifying individuals in the Witness Security Program under Exemption 3 and 18 U.S.C. § 3521; (c) records identifying individuals on a watchlist under Exemption 7(E); and (d) records whose release could reasonably be expected to endanger the life or safety of a confidential human source under Exemptions 7(D), 7(E), and 7(F). Seidel Decl., Ex. K ¶¶ 4, 34. As discussed below, with respect to each category of unacknowledged records, the FBI's *Glomar* response is appropriate and should be upheld by the Court.

### A. National Security or Intelligence Records

"[W]hen a *Glomar* response touches upon issues of national security—'a uniquely executive purview'—courts must give agency decisions substantial deference." *Competitive Enter. Inst. v. NSA*, 78 F. Supp. 3d 45, 53 (D.D.C. 2015) (quoting *EPIC*, 678 F.3d at 931). Courts in this District "consistently defer[ ] to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies v. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003). If the agency's *Glomar* response appears "logical" and "plausible," the Court should sustain the agency's *Glomar* assertion. *ACLU v. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011).

FOIA Exemption 1 permits agencies to withhold information specifically protected from disclosure by an executive order in the interest of national security. 5 U.S.C. 552(b)(1); *see Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009). Exemption 3 provides for the non-disclosure of information specifically protected from disclosure by statute, either because the statute provides no discretion regarding disclosure of the information, or because the statute sets specific criteria that are shown to be satisfied by the information at issue. 5 U.S.C. § 552(b)(3); *Reps. Comm. for Freedom of the Press v. Dep't of Just.*, 816 F.2d 730, 734 (D.C. Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989).

7

Relying on Exemptions 1, 3, and the National Security Act, 50 U.S.C. § 3024(i)(1), the FBI issued a *Glomar* response covering records that—if their existence or non-existence was acknowledged—could harm United States national security or the FBI's efforts to gather intelligence. Seidel Decl., Ex. K ¶¶ 8. While the FBI does not acknowledge the existence or non-existence of such records, this category of records may include "national security investigative files pertaining to . . . terrorism or counterintelligence," records of "surveillance targeting acknowledged subjects of national security interest," "non-public documents pertaining to national security related intelligence programs or events," and "intelligence community (IC) assessments concerning threats to the national security of the United States." *Id.* The disclosure of the existence or non-existence of national security or intelligence information "would provide adversaries with valuable insight into the [Bureau's investigative efforts," "permit hostile governments to appraise the scope, focus, location[,] and capabilities of the [Bureau's] intelligence-gathering methods and activities," "allow hostile agents to devise countermeasures to circumvent" the Bureau's methods and activities, and allow hostile actors to "assess[] the ability of [the Bureau] to obtain information on a specific target during a specific period of time," thus damaging the Bureau's national security and intelligence mission. *Id.* ¶ 19.

To the extent Plaintiff's FOIA request includes such records, the FBI's *Glomar* response finds unequivocal support in FOIA Exemptions 1, 3, and the National Security Act, 50 U.S.C. § 3024(i)(1). *See, e.g.*, *Schaerr v. Dep't of Just.*, 435 F. Supp. 3d 99, 113 (D.D.C. 2020) (accepting agency components' *Glomar* responses relying on Exemptions 1 and 3). The FBI is bound to comply with Executive Order 13526, which exempts from public disclosure classified records of intelligence activities, sources, and methods. Seidel Decl., Ex. K ¶¶ 11–16. Furthermore, the National Security Act mandates the protection of intelligence sources and methods, whether such

8

information is classified; such information is therefore properly withheld pursuant to the non-discretionary prong of Exemption 3. *Id.* ¶¶ 17–19; *see also* 50 U.S.C. § 3024(i)(1). Accordingly, the FBI has appropriately asserted a *Glomar* response over unacknowledged records pertaining to national security and intelligence.

        **B.**    **Records that Would Identify Individuals in the Witness Security Program**

The FBI also asserted a *Glomar* response over unacknowledged records that could identify individuals in the Witness Security Program, relying on FOIA Exemption 3 and 18 U.S.C. § 3521(b)(1)(G). Seidel Decl., Ex. K ¶¶ 20–22. That statutory provision, and regulations promulgated thereunder, prohibit the FBI from disclosing "any information concerning the Witness Security Program or its participants." *Id.* ¶ 20 (citing 18 U.S.C. § 3521(b)(1)(G), 28 C.F.R. 0.111(b)(B), and Attorney General Order No. 2511-2001). "To publicly address the existence of Witness Protection Program information in the context of a particular request would indicate the presence of [such] information in responsive records, thus revealing information that is statutorily prohibited from being disclosed." *Id.* ¶ 21.

The FBI therefore asserts this standard *Glomar* response whenever a FOIA requester seeks information about an individual, in order for its assertions to remain credible and effective, *id.*, and to further the government's interest in protecting information that would identify confidential witnesses, *see CIA v. Sims*, 471 U.S. 159, 172 (1985); *Barnes v. FBI*, 35 F.4th 828, 830–31 (D.C. Cir. 2022). The Court should therefore leave undisturbed the FBI's *Glomar* response with respect to unacknowledged documents that could reveal individuals in the Witness Security Program.

        **C.**    **Records that Would Identify Individuals on a Watchlist**

The FBI consistently "neither confirms nor denies the existence of watchlist records" in response to a FOIA request for records pertaining to an individual, as is the case in this matter. *See* Seidel Decl., Ex. K ¶ 23. "The FBI's records concerning terrorist watchlists were compiled and

9

created in furtherance of the FBI's law enforcement and national security functions." *Id.* ¶ 24. The information compiled in such lists "is used to enable" the FBI to perform its core law enforcement and national security-related duties. *Id.* Therefore, watchlist records meet FOIA Exemption 7's threshold requirements. *See Rhodes v. FBI*, 316 F. Supp. 3d 173, 177 (D.D.C. 2018) (finding that the threshold law enforcement of Exemption 7 was "without question satisfied" with respect to the FBI's records concerning watchlists).

Furthermore, revealing the existence or non-existence of individuals on terrorist watchlists "would disclose the techniques and procedures for law enforcement investigations" and "risk circumvention of the law." 5 U.S.C. 552(b)(7)(E). For example, an individual who "knows who is or is not on a watchlist" can deduce the behavior that may land a person on such a list. Seidel Decl., Ex. K ¶ 25. "This knowledge would allow criminals to develop countermeasures to conceal their activities and thwart [the FBI's] efforts to combat crime and protect" national security. *Id*. Revealing that a person is on a watchlist "would induce the individual to flee, hide[,] or destroy evidence"; on the other hand, disclosing that a person is not on a watchlist "could embolden a criminal to continue [their] activities and encourage other criminals" to follow suit. *Id.* Either outcome would diminish the FBI's ability to effectively deploy watchlists to meet its law enforcement and national security mandate. *See id.*

Because the disclosure of the existence or non-existence of watchlists records would harm an interest protected under FOIA Exemption 7(E), the Court should enter summary judgment in favor of Defendant in connection with its assertion of *Glomar* over records that would identify individuals on a watchlist.

### D. Records that Could Endanger the Life or Physical Safety of Confidential Sources

The FBI consistently relies on Exemptions 7(D), 7(E), and 7(F) in neither confirming nor denying the existence of records concerning confidential sources or the Bureau's confidential human source program. Seidel Decl., Ex. K ¶ 27. Exemption 7(D) "protects . . . information that could reasonably be expected to disclose the identity of a confidential source." *Shem-Tov v. Dep't of Just.*, 531 F. Supp. 3d 102, 107 (D.D.C. 2021); 5 U.S.C. § 552(b)(7)(D). As discussed above, Exemption 7(E) exempts from disclosures law enforcement techniques and procedures. *See supra*. Finally, Exemption 7(F) protects records or information compiled for law enforcement purposes "the production of [which] . . . could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. 552(b)(7)(F); *see Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015) (the FOIA does not require an agency "to identify the specific individuals at risk from disclosure," thus by its own express terms, Exemption 7(F) is to be construed broadly).

Thus, disclosure of the existence or non-existence of confidential source information implicates the interests protected by Exemptions 7(D), 7(E), and 7(F). Taken in order: first, disclosure of the existence or non-existence of confidential source information in response to a particular FOIA request "would create a pattern" of information from which "criminals could easily discern who is and is not a [FBI confidential source]." *Id.* ¶ 29. Second, revealing the existence or non-existence of records about confidential sources "could reveal non-public investigative strategies and the scope of intelligence available to the [FBI]," and could allow bad actors to identify confidential sources, thus limiting the Bureau's ability to rely on this law enforcement technique while exposing confidential sources to potential reprisal. *Id.* ¶ 31. And third, the agency's "[e]xperience has shown that when identifying information concerning a

11

[confidential source] becomes known, that disclosure places the [confidential source] in a particularly vulnerable position and subjects the [confidential source] to violent retaliation through physical harm or even death." *Id.* ¶ 33.

For these reasons, the Court should uphold the FBI's reliance on Exemptions 7(D), 7(E), and 7(F) in issuing a standard *Glomar* response pertaining to records that could endanger the life or physical safety of confidential sources.

## CONCLUSION

For the foregoing reasons, the Court should grant the FBI's motion for summary judgment. A proposed order accompanies this submission.

Dated:  August 12, 2024

        Respectfully submitted,

        MATTHEW M. GRAVES, D.C. Bar #481052
        United States Attorney

        BRIAN P. HUDAK
        Chief, Civil Division

By:   /s/ *Fithawi Berhane*
        FITHAWI BERHANE
        Assistant United States Attorney
        United States Attorney's Office
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-6653
        Fithawi.Berhane@usdoj.gov

*Attorneys for the United States of America*