UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AYMAN FAREH SOLIMAN,

    Plaintiff,

           v.

TERRORIST SCREENING CENTER,

    Defendant.

Civil Action No. 24-cv-634 (LLA)

### DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

1.    I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit, from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act (FOIA) Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act (FOIPA) litigation cases nationwide. Prior to joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration (DEA), from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various

assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division, where I oversaw FOIPA litigation for the U.S. Army. I am an attorney licensed in the State of Ohio and the District of Columbia.

2. In my official capacity as Section Chief of RIDS, I supervise approximately 243 FBI employees, supported by approximately 106 contractors, who staff a total of nine (9) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's FOIPA request that is the subject of this litigation.

4. The FBI submits this declaration in support of Defendant's Motion for Summary Judgment. Part one of this declaration provides the Court with a summary of the administrative history of Plaintiff's request; part two describes the procedures used to search for responsive records; and part three of this declaration provides the FBI's justification for neither confirming

nor denying the existence of certain types of records pursuant to FOIPA Exemptions 1, 3, 7(D), 7(E), 7(F) and Privacy Act Exemption (j)(2), 5 U.S.C. § 552(b)(1), (b)(3), (b)(7)(E), (b)(7)(F), and § 552a(j)(2).

**PART I:**

**ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST**

5.By letter dated October 28, 2021, Plaintiff submitted a FOIPA request to the FBI's Terrorist Screening Center (TSC) seeking:

> Records prepared, received, transmitted and/or maintained by the Terrorist Screening Center relating to Ayman Fareh Soliman from January 1, 2010 to the present day:
> - Records of communications from or to foreign partners about Mr. Soliman, including, but not limited to, biographic, biometric, and derogatory information;
> - Records of encounters with Mr. Soliman received by or maintained by TSC;
> - Intelligence Information Reports containing information about Mr. Soliman and the accompanying summaries;
> - Records of queries by TSC to Fusion Centers about Mr. Soliman and the resulting information received;
> - EMA records including information about Mr. Soliman and the accompanying terrorism information;
> - Daily Summary Reports containing information about Mr. Soliman;
> - Subject Matter Expert (SME) reports and guidance containing information on Mr. Soliman;
> - Records of remote queries of the TSDB for Mr. Soliman
> - Records of requests to remove Mr. Soliman from the TSDB received by or maintained by TSC.

Plaintiff provided a signed privacy waiver with authorization to release information to his attorney. **(Ex. A.)**

6.On the same date that the aforementioned request was submitted to the TSC, Plaintiff also submitted a request to the FBI's Record/Information Dissemination Section (RIDS) for information pertaining to Mr. Soliman. **(Ex. B.)** As the TSC is a subcomponent of the FBI, the request submitted to that office was forwarded to RIDS which handles all FOIPA requests for

the agency. Upon receipt of the request letter from the TSC, RIDS reviewed the request and incorporated it into the FOIPA request that it had already received on Mr. Soliman.

7. By letter dated November 9, 2021, the FBI acknowledged receipt of Plaintiff's FOIPA requests and notified Plaintiff it had assigned his request FBI FOIPA Request Number 1508332-000. The FBI also informed Plaintiff of the following: Plaintiff submitted his request via the FBI's eFOIPA system, the FBI determined it was not consistent with the FBI eFOIPA terms of service, and future correspondence would be sent through the mail; Plaintiff would be responsible for applicable fees; and for the purpose of assessing any fees, the FBI determined as a general (all other) requester, Plaintiff would be charged applicable search and duplication fees. Additionally, the FBI informed Plaintiff he could check the status of his request and/or contact the FBI with any questions at www.fbi.gov/foia. Furthermore, Plaintiff could appeal the FBI's response to the DOJ, Office of Information Policy (OIP) within ninety (90) days of its letter, contact the FBI's public liaison, and or seek dispute resolution services by contacting the Office of Government Information Services (OGIS). **(Ex. C.)**

8. By letter dated February 15, 2022, the FBI informed Plaintiff it conducted a search of the places reasonably expected to have records; however, it was unable to identify records responsive to Plaintiff's request. The FBI also supplied an FBI FOIPA Addendum with additional explanation as to its standard responses to FOIPA requests and informed Plaintiff he could seek additional information regarding the FBI's determinations by visiting www.fbi.gov/foia. Lastly, the FBI stated that although Plaintiff's request was in litigation, he could appeal the FBI's determinations by filing an administrative appeal with DOJ, OIP within ninety (90) days of the date of the letter, seek dispute resolution services by contacting the OGIS, or contact the FBI's FOIA public liaison. **(Ex. D.)**

9. By email dated March 23, 2022, Plaintiff's attorney contacted the FBI seeking information about the status of the request. FBI advised that correspondence was mailed on February 15, 2022, via standard mail; however, Plaintiff stated that the correspondence was never received. FBI confirmed receipt of this additional correspondence and advised that a new copy of the correspondence would be sent. **(Ex. E.)**

10. By letter dated May 13, 2022, Plaintiff submitted an appeal to DOJ, OIP challenging the FBI's February 15, 2022 no record response. **(Ex. F.)**

11. By letter dated May 27, 2022, OIP acknowledged receipt of Plaintiff's appeal and informed Plaintiff OIP assigned appeal number A-2022-01414 to his appeal. **(Ex. G.)**

12. By letter dated July 18, 2022, OIP informed Plaintiff it was affirming the FBI's actions in response to Plaintiff's FOIPA Request Number 1508332-000; therefore, OIP was closing Plaintiff's appeal. OIP determined that the FBI's response was correct and that it conducted an adequate, reasonable search for records responsive to the request. In addition, to the extent that the request sought access to records that would either confirm or deny an individual's placement on any government watchlist, OIP determined that the FBI properly refused to confirm or deny the existence of any such records because their existence is protected from disclosure pursuant to 5 U.S.C. § 552(b)(7)(E).[1] Furthermore, OIP advised that if the requester was seeking a copy of their FBI identification record or "rap sheet" Plaintiff would need to submit a request to Criminal Justice Information Services (CJIS). Finally, OIP advised

---

[1] The FBI previously addressed Plaintiff's request for watchlist information in its February 15, 2022 response via the FBI FOIPA Addendum. OIP restated the applicability of 5 U.S.C. § 552(b)(7)(E) to further clarify FBI's previous response. *See* **(Ex. K.)**

Plaintiff if he was dissatisfied with the action on his appeal, Plaintiff could file a lawsuit in federal district court, or seek mediation services from OGIS.[2] **(Ex. H.)**

13. By letter dated June 28, 2022, Plaintiff submitted an additional FOIPA request to the TSC seeking:

> Records created or maintained by the Terrorist Screening Center ("TSC") relating to Ayman Fareh Soliman from January 1, 2010 until the day this request is processed:
> - The entirety of any file about Mr. Soliman maintained by the Terrorist Screening Dataset ("TSDS") and its predecessor, the Terrorist Screening Database ("TSDB"), including the record history and any archived TSDS/TSDB records;
> - Records of communications between the TSC and Egyptian partners regarding Mr. Soliman;
> - Records of remote queries of the TSDS/TSDB regarding Mr. Soliman;
> - Records regarding Mr. Soliman maintained in the Encounter Management Application ("EMA"), including but not limited to records created or received on the following dates:
>   - 06/25/2019; 07/03/2019; 10/04/2019; 10/18/2019; 10/22/2019; 11/18/2019; 12/02/2019; 12/17/2019; 02/08/2021;
> - Records of queries by TSC to Fusion Centers regarding Mr. Soliman and the resulting information received;
> - Records of requests to remove Mr. Soliman from the TSDS/TSDB received by or maintained by TSC.[3] **(Ex. I.)**

After the FBI received this additional request, it reopened Plaintiff's FOIPA request under FOIPA number 1508332-001.

14. By letter dated July 26, 2022, the FBI informed Plaintiff it conducted a search of the places reasonably expected to have records; however, it was unable to identify records subject to the FOIA that were responsive to Plaintiff's request. Additionally, the FBI informed Plaintiff the following: his request was reopened based on the additional information provided, a new main and reference search was conducted, and the FBI was unable to identify records

---

[2] In addition to their response letter, OIP also enclosed a copy of the FBI's no record response.

[3] As with Plaintiff's previous request, this request to the TSC was forwarded to RIDS for handling and response. See ¶ 6, *supra*.

subject to the FOIA that were responsive to his request. The FBI also supplied an FBI FOIPA Addendum with additional explanation as to its standard responses to FOIPA requests and informed Plaintiff he could seek additional information regarding the FBI's determinations by visiting www.fbi.gov/foia. Lastly, the FBI stated that although Plaintiff's request was in litigation, he could appeal the FBI's determinations by filing an administrative appeal with DOJ, OIP within ninety (90) days of the date of the letter, seek dispute resolution services by contacting the OGIS, or contact the FBI's FOIA public liaison. **(Ex. J.)**

## PART II:
## THE FBI'S CENTRAL RECORDS SYSTEM AND SEARCH METHODOLOGY

15. Plaintiff's request seeks records on Ayman Fareh Soliman, a subject reasonably expected to be indexed within the automated indices of the FBI's Central Records System (CRS). Given the comprehensive nature of the information contained therein (see ¶12, *infra*), the CRS is the FBI system of records where responsive records would reasonably be expected to be found.

### THE FBI'S CENTRAL RECORDS SYSTEM

16. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency, and in the fulfillment of its administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBIHQ, FBI field offices, and FBI legal attaché offices worldwide.

17. The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subjects. The broad array of CRS file classification categories includes types of criminal conduct and investigations conducted by the FBI, as well as

categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number consisting of three sequential components: (a) the CRS file classification number; (b) the abbreviation of the FBI office of origin (OO) opening the file; and (c) the assigned individual case file number for the particular subject matter.[4] Within each case file, pertinent documents of interest are "serialized," or assigned a number in the order which the document is added to the file, typically in chronological order.

*The Central Records System's General Indices and Indexing*

18.    The general indices to the CRS, comparable to a digital version of a library card catalog, function as the key to locating records within the enormous amount of information contained in the CRS. FBI personnel index information in the CRS by individual (person), organization (entity, place, or thing), or activity or event (e.g., terrorist attack or bank robbery) when information is deemed of sufficient significance to warrant indexing for future retrieval.[5] The entries in the general indices fall into two categories:

---

[4]  For example, in fictitious file number "11Z-HQ-56789," "11Z" indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO, and "56789" indicates the assigned case specific file number.

[5] The FBI's Records Management Policy mandates that FBI personnel enter all federal records into an authorized FBI recordkeeping system. FBI personnel are responsible for managing records they create and receive, determining the record status for each potential record, and importing records into an electronic recordkeeping system. See FBI Records and Information Management Policy Guide, 1223PG (September 22, 2022) at pp. 11-12 and 25-28 (Sections 2.9 and 4.2.3) available at https://vault.fbi.gov/records-and-information-management-policy-guide-1223pg/records-and-information-management-policy-guide-1223pg/view (last accessed on May 2, 2023).

A. <u>Main index entry</u>: A main index entry is created for each individual or non-individual (e.g., organization, event, or activity) that is the subject or focus of an investigation. Main subjects are identified in the case title of a file.

B. <u>Reference index entry</u>: A reference index entry is created for an individual or non-individual (e.g., organization, event, or activity) associated with an investigation, but who or which is not the main subject or focus of the investigation. Reference subjects are typically not identified in the case title of a file.

*Sentinel*

19.  FBI personnel access the general indices through Sentinel, the FBI's case management system (since July 1, 2012). Prior to Sentinel, the FBI relied on a case management system known as Automated Case Support (ACS).[6] On August 1, 2018, the FBI decommissioned ACS and the ACS indexed data was migrated into Sentinel, where these indices are accessible and searchable through Sentinel's search function. In addition to providing access to the information previously indexed into ACS, Sentinel provides a means for FBI personnel to access the FBI's older manual indices, when necessary.

20.  FBI personnel rely on Sentinel to locate records and other types of documents to fulfill essential functions, such as: conducting criminal, counterterrorism, and national security investigations; conducting background investigations; performing citizenship and employment queries; and administering security screenings, to include presidential protection. Sentinel's index search methodology and function allow FBI personnel to query the CRS for indexed subjects in case files.

---

[6] As part of the ACS implementation process, over 105 million pre-existing CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices.

21. However, the identification of records indexed to the subject of a FOIPA request does not automatically mean the indexed records are responsive. Index searches using the search functions available in Sentinel are the means by which potentially responsive records are located, but ultimately, a FOIPA analyst must review potentially responsive records against the specific parameters of individual requests. Responsiveness determinations are made once indexed records are gathered, analyzed, and sorted by FOIPA analysts who then make informed scoping decisions to determine the total pool of records responsive to an individual request.

ADEQUACY OF SEARCH

*Central Records System Search and Results*

22. The FBI determined that a search of the CRS automated indices, available within Sentinel via the Sentinel and ACS search function represented the most reasonable means for the FBI to locate records potentially responsive to Plaintiff's FOIPA request. This is because, as described above, these general indices provide access to a comprehensive, agency-wide set of indexed data on a broad array of investigative and administrative subjects and consist of millions of searchable records that are updated daily with newly indexed information.

23. In response to Plaintiff's request number 1508332-000, the FBI conducted a search for main entries[7] in the Sentinel/ACS indices via Sentinel's search function. The FBI searched the indices using the following terms: "Soliman, Ayman," "Ayman, Fareh," "Fareh, Soliman," "Ayman Soliman," "Fareh Ayman," and "Soliman Fareh," employing a search cut-off date[8] of November 4, 2021, which is the date of the FBI's initial search for records. The FBI did not locate any responsive records as a result of this search.

---

[7] See ¶ 18, *infra*, for an explanation of main and reference entries.

[8] A search cut-off date is the date that the agency commences a search for records responsive to a FOIPA request. Generally, the FBI uses a search cut-off date to delineate the scope of a FOIPA

24. In response to Plaintiff's request number 1508332-001, the FBI conducted an additional search for main and reference entries in the Sentinel/ACS indices via Sentinel's search function. The FBI searched the indices using the following terms: "Soliman, Ayman," "Ayman, Fareh," "Fareh, Soliman," "Ayman Soliman," "Fareh Ayman," and "Soliman Fareh," employing a search cut-off date of July 22, 2022, which is the date that the FBI initiated its additional search for records following the reopening of Plaintiff's request. The FBI did not locate any responsive records as a result of this search.

25. Plaintiff has provided no information for the FBI to reasonably conclude that records responsive under the FOIPA would reside outside the CRS. There is no indication from the CRS search efforts that responsive records would reside in any other FBI system or location. Thus, the FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be expected to locate responsive records subject to the FOIPA.

## PART III: THE FBI'S STANDARD *GLOMAR* RESPONSES

26. The FBI relies on a *Glomar* response to FOIPA requests when acknowledging the existence or non-existence of certain categories of responsive records would result in harm to an interest protected by one or more FOIA exemptions.[9] To be credible and effective, the FBI must

---

request by treating records created after that date as not responsive to the request. See 28 C.F.R. § 16.4(a). The Department of Justice (DOJ) provides notice of the use of a search cut-off date in its published FOIA reference guide on its FOIA website (https://www.justice.gov/oip/doj-guide-freedom-information-act-0) (last accessed June 5, 2024).

[9] The term "*Glomar*" refers to the subject of a FOIA request submitted to the CIA. The requester sought information concerning a ship named the *Glomar Explorer* and the CIA refused to confirm or deny its knowledge of the *Glomar* vessel, because to do so would compromise the national security or divulge intelligence sources and methods. *Phillippi v. CIA*, 655 F.2d 1325 (D.C. Cir. 1981)

assert a *Glomar* response regardless of whether responsive records exist (i.e., including when the FBI does not possess responsive records). If the FBI invoked a *Glomar* response only when it possesses responsive records, the *Glomar* response would be interpreted as an admission that responsive records exist. This is especially important because the FBI serves dual functions as the country's main internal intelligence agency and a federal law enforcement agency.

27. Non-individuals: To the extent a request for records on a non-individual may implicate classified or unclassified intelligence records and acknowledging the existence or non-existence of such records would harm an interest protected by the FOIA, a *Glomar* response pursuant to Exemptions 1 and/or 3, in conjunction with the National Security Act of 1947 [5 U.S.C. §§ 552(b)(1), (b)(3) and/or 50 U.S.C. § 3024(i)(1)], as applicable, is asserted.

28. Individuals: To the extent a request for records implicates unacknowledged records concerning an individual, the FBI also asserts the above *Glomars* pursuant to Exemptions 1 and 3, in conjunction with the National Security Act of 1947 [5 U.S.C. §§ 552(b)(1), (b)(3) and/or 50 U.S.C. § 3024(i)(1)], as applicable. The FBI also asserts several other *Glomar* responses to requests on individuals. First, pursuant to Exemption 3, in conjunction with 18 U.S.C. § 3521(b)(1)(G), the FBI can neither confirm nor deny the existence of records which could identify a participant in the Witness Security Program. Second, pursuant to Exemption 7(E) the FBI can neither confirm nor deny the existence of an individual's name on a watch list. Finally, pursuant to Exemptions 7(D), 7(E), and 7(F), the FBI can neither confirm nor deny the existence of unacknowledged records or information concerning the use of confidential human sources in the context of a specific investigation.

29. As previously noted, to be credible and effective, the FBI must assert a *Glomar* response regardless of whether responsive records exist (i.e., including when the FBI does not

possess responsive records). If the FBI invoked a *Glomar* response only when it possesses responsive records, the *Glomar* response would be interpreted as an admission that responsive records exist. The FBI includes an addendum with each response letter which informs the requester of the FBI's standard *Glomar* position as to certain types of records, and further advises that the inclusion of the standard addendum is not an indication that records do or do not exist. Consistent with this process, the FBI incorporates by reference the standard justification for these *Glomar* responses as an exhibit to the FBI's public declarations, whether such records do or do not exist. **(Ex. K.)**

## CONCLUSION

30. The FBI performed adequate and reasonable searches for records and was unable to locate any responsive records subject to the FOIPA.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through K attached hereto are true and correct copies.

Executed this 25th day of July 2024.

*[signature]*

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia